RANDALL JOHNSON, A MINOR, BY DONNA JOHNSON, HIS MOTHER AND NATURAL GUARDIAN, AND ANOTHER v. LORRAINE PARK APTS. INC.

128 N. W. (2d) 758.

May 29, 1964—No. 38,840.

*Beaudoin, Pavlak & Rasmussen,* for appellants.

*Thomas J. Battis* and *Murnane, Murnane, Battis & deLambert,* for respondent.

MURPHY, JUSTICE.

This is an appeal from orders denying plaintiffs' motion for judgment notwithstanding the verdict or a new trial in actions for personal injury and consequential damages. The actions arose from severe burns suffered by the infant plaintiff, Randall Johnson, on the morning of July 4, 1960, allegedly as a result of negligent operation of an incinerator by defendant.

At the time of the accident Randall Johnson, age 3½, was living with his parents in one of three small, adjacent apartment buildings in South St. Paul. In the rear of these three buildings was a common area used as a play area for children, for hanging of clothes, et cetera. Each building had an incinerator in the rear for the common use of its tenants. The incinerators were attached directly to the rear of the buildings and tenants could deposit trash and garbage in the incinerator from inside the building by means of a door and a chute leading to the fire chamber of the incinerator. The incinerators have two chambers—an upper fire chamber, where the burning takes place, separated by a grate from a lower ash chamber. There is a door to each chamber outside of the building. Material which accumulated in the incinerators was regularly burned by the caretaker, Mr. John Erickson, after 4 p. m. each day, there being a city ordinance prohibiting burning earlier. Occasionally, tenants would light the fire. The door to the bottom chamber of each incinerator was commonly left open to provide a better draft, and the fire would be left to burn itself out.

About 10:45 on the morning of July 4, Shirley Erickson, the wife of the caretaker, was attracted to the rear window of her apartment

by the sound of crying. She saw Randall Johnson standing 15 to 20 feet from the incinerator with his shirt in flames. She rushed from the building and extinguished the flames, Randall having remained in the same spot. Several other persons, including Randall's parents, soon arrived on the scene, and all who testified agree Randall was then at least 10 feet from the incinerator. None saw any matches or other inflammable material in Randall's vicinity; but neither did any witness notice any sign of fire in the incinerator, Mr. Johnson testifying that he looked in that direction and saw both doors open. Mrs. Johnson testified that there were no burns or soot on Randall's hands or trousers.

The only person who looked into the incinerator at the time of the accident was Police Officer Mike Crnobrna, who testified that he took a fast glance into each chamber. In the upper chamber he saw an unburned grocery bag full of trash, and in the lower he saw burned ashes, but noticed no flame, spark, or heat. Mr. Johnson testified that he checked the incinerator about an hour after the accident and saw nothing in the upper chamber but saw a layer of glowing coals, 5 to 6 inches deep, in the lower chamber.

Randall was quoted as giving two versions of how he was burned. His mother testified that immediately after the accident he said, "I got burned from the incinerator." On the other hand a neighbor, who was also a nurse at the hospital to which Randall was taken, testified that about 4 days after the accident she asked him how he got burned and he said, "Debbie gave me matches." The nurse reported this to Mrs. Johnson shortly thereafter.

The "Debbie" referred to was Deborah Erickson, 9 years of age, a daughter of the caretaker. It is uncontroverted that she had a book of matches on the morning of July 4 before the accident, and she so testified. She got them from two other girls, who were using them to light paper "snakes" and firecrackers. There were burn marks on the sidewalk near the scene of the accident where some of these snakes had been ignited. However, Debbie denied giving Randall any matches.

Although the Johnsons never said anything about the incinerator, they did, in the first week or two after the accident, indicate a belief

that matches were involved. Also, about 4 weeks after the accident, in discussing it with Mr. Bush, the building manager, the child's father stated that the injury "appeared to be more serious than he first anticipated" and inquired of him if he could get financial help. At that time he made no claim that the child's injuries were caused by contact with the incinerator. Mr. Bush was not informed of this claim until after the suit had started. There is no evidence in the record that there were hot coals or ashes in the bottom of the incinerator at the time the accident occurred. The record indicates that the child's cotton shirt was ignited by some means. Apparently the trial court permitted the cases to go to the jury on the assumption that there was some basis for finding negligence in the mother's testimony of what the child reported to her. It is unnecessary to again review the facts and circumstances which weigh against this evidence, and we pass to the issues raised on this appeal.

■ The first point we consider is the assertion of the plaintiffs that the trial court erred in denying a motion for a new trial on the ground that the verdict was not supported by the evidence. In discussing this point it is unnecessary to review the facts already stated. It is sufficient to say that a determination of a fact issue made at the trial level will not be disturbed on appeal where there is a conflict in the evidence and the trial judge has given his approval to the verdict by denying a new trial. It is not the duty of the appellate court to determine the credibility of the evidence, to weigh it, or to resolve conflicts therein. 14 Dunnell, Dig. (3 ed.) § 7142; Brewitz v. City of St. Paul, 256 Minn. 525, 99 N. W. (2d) 456.

■ It is next claimed that the trial court erred in denying plaintiffs' motion for a new trial on the ground of newly discovered evidence. The motion was based upon affidavits of Officer Crnobrna from which it appears that the officer either seeks to retract or modify testimony given by him at the trial to the effect that there were no coals or hot ashes in the incinerator when he first examined it after the accident. At the trial he testified as follows:

"Q. Did you look in there because you were trying to determine whether or not that had anything to do with Randy's injuries?

"A. Yes.

"Q. That is the reason you looked there?

"A. Yes.

"Q. And you found no heat or sparks or coals or anything else either at the top or bottom?

"Mr. Beaudoin [attorney for plaintiffs]: That is not a correct statement of the witness' testimony.

"Q. Did you find any fire or heat, flame, sparks, coals or fire of any kind in either the top or bottom?

"A. No. Top or bottom?

"Q. Top or bottom.

"A. No, I didn't."

By his first affidavit in support of the motion for a new trial, he now states:

"* * * the truth is that I did not look inside or glance inside the lower part of the incinerator; that I do remember the lower door was partly ajar; that I am absolutely certain that I did not look inside or see inside the lower part of the incinerator * * *."

It is well recognized that the trial court has broad discretion in determining whether new evidence justifies a new trial.

Minnesota authorities relating to whether a new trial should be granted because of newly discovered evidence are fully gathered in 14 Dunnell, Dig. (3 ed.) §§ 7123 to 7131b, inclusive. In disposing of the issue thus raised, we need only note that in Crnobrna's supporting affidavits, he said:

"I want further to say that I told everyone who asked me about the incinerator before the trial, including Plaintiffs' attorneys, that I did not see inside the lower part of the incinerator * * *,"

and

"* * * when I was interviewed by the attorney for Randy I told him the same information and facts I have stated here and in my first affidavit * * *."

It is well established that where the alleged newly discovered evidence

is merely cumulative, contradictory, or impeaching of the evidence adduced at trial, ordinarily there is no abuse of discretion in denying a new trial. The matter of granting a new trial for newly discovered evidence rests largely in the discretion of the trial court, and such discretion is to be exercised cautiously and sparingly and only in furtherance of substantial justice. Cut Price Super Markets v. Kingpin Foods, Inc. 256 Minn. 339, 98 N. W. (2d) 257; Brown v. Bertrand, 254 Minn. 175, 94 N. W. (2d) 543; Bruno v. Belmonte, 252 Minn. 497, 90 N. W. (2d) 899; Hlubeck v. Beeler, 214 Minn. 484, 9 N. W. (2d) 252.

Here it appears that the version of the facts contained in Crnobrna's affidavits in support of a new trial was given to the plaintiffs' attorneys prior to the trial. Accordingly, it does not constitute evidence "newly discovered, which with reasonable diligence could not have been found and produced at the trial." Rule 59.01(4), Rules of Civil Procedure. Accordingly, we cannot say that the trial court abused its discretion in denying plaintiffs' motion for a new trial on this ground.

It is next claimed that plaintiffs were prejudiced by the instruction of the trial court. The instruction complained of was prompted by plaintiffs' argument to the jury. The record does not include plaintiffs' argument, but we gather from the court's instructions that the jury was told that the child could have "put something into the incinerator or taken something out." In his instruction the trial court called the attention of the jury to this argument and said:

"* * * There is no evidence in this case of such a fact and you will not consider that argument in making your deliberations.

"It is the law that you are not permitted to speculate or guess as to whether or not defendant was negligent."

Plaintiffs claim that this instruction withdrew from the jury all consideration of circumstantial evidence and all reasonable inferences to be drawn from the facts proved.

The instruction must be viewed in light of the evidence submitted. The proof that the child was burned by fire in the incinerator derives from the testimony of the mother as to what the child told her. Op-

posed to this evidence is the contrary statement made by the child to the nurse, and the fact that there was no proof of the existence of coals or hot ashes in the incinerator at the time the accident occurred. Moreover, there was evidence relating to the lighting of matches and small fireworks shortly before the accident. There was no proof that the child was closer than 10 or 15 feet to the incinerator. The mere possibility that the child put something in or took something out of the incinerator was wholly within the realm of speculation and conjecture. The jury could as well have assumed that the child's clothing became ignited from the lighting of matches or from the sparks of the small fireworks. We assume that the trial court had in mind those authorities which hold that inferences may be drawn from proven or admitted facts, but they may not be based upon suspicion that unproven facts may exist. We pointed out in State v. Meany, 262 Minn. 491, 115 N. W. (2d) 247, that facts may be established by circumstantial evidence but where there is no evidence, direct or circumstantial, to support an inference any conclusion based thereon becomes merely a conjecture.[1] Here the trial court did not remove from consideration of the jury inferences from direct and circumstantial evidence which was actually disclosed by proven facts. He told the jury, "In deciding the disputed questions of fact in this case you must consider and weigh all of the evidence and all of the circumstances and physical facts brought to light in this case * * *." In his cautionary instruction, the trial court did no more than tell the jury they should not indulge in speculation and conjecture as to how the child's clothing caught on fire. When the instruction is considered in context with the facts established by the record, we do not think that it was unwarranted.

■ The next assigned error as expressed by the plaintiffs' brief is:

---

[1]See, also, Alling v. Northwestern Bell Tel. Co. 156 Minn. 60, 194 N. W. 313; Burke v. B. F. Nelson Mfg. Co. 219 Minn. 381, 18 N. W. (2d) 121; Anderson v. Northern States Power Co. 236 Minn. 196, 52 N. W. (2d) 434; Hagsten v. Simberg, 232 Minn. 160, 44 N. W. (2d) 611; State, by Burnquist, v. Paskewitz, 233 Minn. 452, 47 N. W. (2d) 199; Collings v. Northwestern Hospital, 202 Minn. 139, 277 N. W. 910; Smock v. Mankato Elks Club, 203 Minn. 265, 280 N. W. 851.

"The court erred in allowing defense counsel to refer to the allegations in the complaint." It is asserted that the defense counsel in examination of certain witnesses asked questions which were prejudicial because they contained reference to allegations in the complaint. No authority is cited by plaintiffs in support of this assignment of error. The issue raised is controlled by Carlson v. Fredsall, 228 Minn. 461, 37 N. W. (2d) 744, and Boutang v. Twin City Motor Bus Co. 248 Minn. 240, 80 N. W. (2d) 30, which authorities hold that reference to pleadings by the adversary of the pleader may be proper for the purpose of impeachment or to show an admission.

Affirmed.