Harriet McPHERSON, and John
McPherson, Respondents,

v.

Joseph BUEGE, et al., Appellants.

No. C9–84–829.

Court of Appeals of Minnesota.

Nov. 20, 1984.

Michael R. Sieben, Hertogs, Fluegel, Sieben, Polk, Jones & LaVerdiere, Hastings, for respondents.

Mark J. Condon, Jeff M. Zalasky, Chadwick, Johnson & Condon, Minneapolis, for appellants.

Considered and decided by PARKER, P.J., and FORSBERG and RANDALL, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

This personal injury case, in which liability was admitted, resulted in a verdict for plaintiffs in the total sum of $229,000. Defendants appeal only those parts of the special verdict awarding Harriet McPherson $53,000 for "loss of earning capacity" (presumably "value of working time" as stated in JIG II, 157) to the date of trial and $121,000 for future medical expenses and future loss of earning capacity. Appellants contend that the verdict as to those two categories of the award was not substantiated by the evidence and that the trial court erred in denying their motion for judgment NOV, remittitur or a new trial. We affirm.

## FACTS

Respondent Harriet McPherson, age 55, and her husband farm approximately 1,500 acres near Stillwater, Minnesota. They own a dairy herd, and they operate an egg business and a seed and fertilizer business. Mrs. McPherson performed all the household duties and was actively involved in all aspects of their operation.

Testimony established that, aside from caring for their foster children and preparing all meals, including those for the hired hands, she was responsible for all record-keeping essential to the management of the operation, including preparation of income tax returns. Further, she drove a tractor during harvest; trucked parts, seed, fuel and food to the fields; helped prepare and load fertilizer and herbicides; fed the dairy animals and cleaned their buildings; and was responsible for 300 chickens and their eggs.

In October 1981 she was involved in a collision with a vehicle driven by appellant Joseph Buege, an employee of Miller Excavating, Inc., and sustained a fractured right arm and injuries to her neck and left leg. Hospitalized five days, she was discharged wearing an "airplane splint," which held her arm at a right angle to her body. She was placed on a physical exercise routine at home until January 1982 and then began physical therapy treatments semi-weekly for approximately six months. From then until trial, she experienced neck and shoulder pain, pain in her left leg and, after a while, low back pain. At trial her treating physician, an orthopedic surgeon, testified that she had a 30 percent loss of motion in her shoulder, had chronic, ongoing cervical strain, degenerative disc disease in her neck and low back, headaches secondary to her back problem, and radiating pain down the leg, all causally related to the accident. He said she was totally disabled for six months after the accident and placed the following restrictions on her activities: she was to avoid continuous or overhead work or work requiring her to move her head quickly, avoid lifting over 20 pounds or 10 pounds repetitively, and avoid pushing or pulling over 50 to 60 pounds. It was his further opinion that she would require between $500 and $1,000 yearly in future medical expenses during a 28-year life expectancy. Appellants presented no expert medical testimony.

Mrs. McPherson testified that she was limited in the tasks she could perform since the accident. She could no longer do all of the cooking and cleaning. She could no longer get groceries alone because of lifting restrictions. Her ability to do many of the farming activities was also significantly limited. She could no longer feed and care for the young stock. She could no longer drive trucks or operate the tractors. She could no longer rake hay or wash and gather eggs as she used to do. She could still do the bookkeeping, but it took her longer to do because of headaches and back pain.

Joe Steen, a vocational psychologist, testified on behalf of Mrs. McPherson concerning the impairment of her earning capacity. He categorized her work into three functions: field work, bookkeeping, and farm management. He equated these jobs to similar jobs in the economy and assigned them appropriate income values. He determined that she had sustained a 50 percent reduction in earning capacity based on the fact that she could no longer perform the major portion of her work, and the things she could do, such as bookkeeping, could not be done efficiently. He estimated that she worked 3,000 or so hours per year. After assigning one third of the total time to each category, he computed her annual income loss at over $25,000 (including $10,000 cost of replacement labor). Appellants presented no expert testimony to rebut Mr. Steen's opinion.

## ISSUE

Did the trial court err in refusing the post-trial motions brought on the ground of excessive damages?

## DISCUSSION

Appellants contend that the court erred by not granting their motion for judgment

notwithstanding the verdict. The standard in reviewing a denial of a motion for judgment notwithstanding the verdict is:

> whether there is any competent evidence reasonably tending to sustain the verdict. A motion for judgment notwithstanding the verdict admits every inference reasonably to be drawn from the evidence as well as the credibility of the testimony for the adverse party. Unless [the reviewing court] is able to determine that the evidence is practically conclusive against the verdict, or that reasonable minds could reach but one conclusion against the verdict, the trial court's order denying the motion for judgment notwithstanding the verdict should stand.

*Seidl v. Trollhaugen, Inc.,* 305 Minn. 506, 507, 232 N.W.2d 236, 239 (1975).

There was sufficient competent evidence supporting the verdict. The jury could have considered the testimony of Mrs. McPherson, her physician, and the vocational psychologist in reaching their decision. While different persons might have reached a different result, the evidence was not "practically conclusive against the verdict." Therefore, the trial court did not err in denying defendant's motion for judgment notwithstanding the verdict.

■ A remittitur is within the trial court's discretion when a motion for a new trial is made under Minn.R.Civ.P. 59.01(5), which states that a new trial may be granted when "[e]xcessive or insufficient damages [appear] to have been given under the influence of passion or prejudice * * *." *See Jangula v. Klocek,* 284 Minn. 477, 488, 170 N.W.2d 587, 594 (1969). Appellate courts will not interfere with the trial court's decision unless there has been a clear abuse of discretion. *Young v. Hansen,* 296 Minn. 430, 435, 209 N.W.2d 392, 395 (1973).

■ In determining whether a verdict is excessive, the court must consider all of the evidence, including the demeanor and circumstances of the parties. The trial court must determine whether the verdict is within the bounds of the highest sustainable award under the evidence. *See Busch*

*v. Busch Construction, Inc.,* 262 N.W.2d 377, 400 (Minn.1977). To warrant overturning a verdict on appeal, the damages must "so greatly exceed adequate compensation as to be accounted for on no other basis than that of passion or prejudice." *Gilbertson v. Gross,* 232 Minn. 373, 375, 45 N.W.2d 547, 548 (1951).

**A. Loss of Earning Capacity to Date of Trial.**

The jury awarded Mrs. McPherson $53,000 for loss of earning capacity from the date of injury to the date of trial, a period of about two years and three months. Evidence supporting this award included Mrs. McPherson's testimony about her duties around the farm, her total incapacitation for the first six months after the accident, her subsequent inability to perform many of her old jobs, and the fact that the other jobs which she could still do took her longer to complete. Additionally, the jury doubtlessly considered the testimony of Mr. Steen, who testified that based on his calculations, Mrs. McPherson's annual loss-of-income capacity was $25,255. This expert testimony was not contradicted by appellants at trial.

■ Counsel for appellants had adequate opportunity to cross-examine Mr. Steen as to the basis for his calculations. He had the further opportunity to controvert his testimony during closing argument. Given Mrs. McPherson's extensive testimony concerning the duties she performed before and after the accident, and since this appears to have been a very large and profitable farm operation, the damages do not appear excessive and the trial court did not abuse its discretion in refusing to grant a remittitur with respect to the award for the value of the working time she lost up to the date of trial.

**B. Future Medical Expenses and Future Loss of Earning Capacity.**

Respondents were awarded $121,000 for loss of future earning capacity and future

medical expenses. Appellants claim that this award is also excessive.

Mrs. McPherson's physician testified that, in his opinion, she could expect to spend between $500 and $1,000 yearly for future medical expenses. The jury was instructed that, based on actuarial tables, she could expect to live another 28 years.

Appellants argue that the doctor was uncertain what expenses she would incur in the future, and therefore this element of damages was not proven to be a reasonable certainty. This is a mischaracterization of his testimony. He testified that he was unsure whether future surgery would be necessary; however, he did state that, to a reasonable degree of medical certainty, she would have future medical expenses of between $500 and $1,000 per year for the rest of her life. Therefore, there was sufficient evidence to support an award of $28,000 for future medical expenses.

Mr. Steen testified that, in his opinion, Mrs. McPherson's loss of future earning capacity amounted to $25,255 per year. Mrs. McPherson testified that she planned to farm another ten years and possibly more. Based on Steen's testimony, the jury could have awarded $250,000 for loss of earning capacity over the next ten years.

Appellants' argument rests primarily on a challenge to the foundation for Steen's estimate. The admissibility of expert testimony rests with the discretion of the trial court, and its decision will not be reversed unless there is a clear abuse of discretion. *Dunshee v. Douglas*, 255 N.W.2d 42, 47 (Minn.1977). Moreover, any alleged deficiencies in the factual basis go more to the weight of the expert's testimony than to its admissibility. *Bohach v. Thompson*, 307 Minn. 332, 337, 239 N.W.2d 764, 767 (1976).

Steen's testimony was for the trier of fact to consider. The jury was instructed to consider all factors relevant to deciding the issue of future earning capacity, including age, life expectancy, health, occupation, skill, experience, and training. As-

suming the jury awarded $28,000 for medical expenses, the remaining $93,000 amounts to $9,300 per year over ten years. This amount is supported by testimony. The trial court did not abuse its discretion in denying appellants' motion.

## DECISION

The jury awards of $53,000 for the value of lost working time until trial and $121,000 for future medical expenses and loss of future earning capacity are supported by sufficient evidence. The trial court did not err in denying appellants' post-trial motions.

Affirmed.