David M. JOHNSON, as Trustee for the Heirs and Next of Kin of Brandon Maurice Johnson, Deceased, Respondent,

v.

WASHINGTON COUNTY, Appellant (C6–92–2406) Respondent (C8–92–2472),

South Washington County School District No. 833, Respondent (C6–92–2406), Appellant (C8–92–2472).

Nos. C6–92–2406, C8–92–2472.

Court of Appeals of Minnesota.

Aug. 31, 1993.

Review Granted Oct. 25, 1993.

Earl P. Gray and Mark Nyvold, Saint Paul, for David M. Johnson, as Trustee for the Heirs and Next of Kin of Brandon Maurice Johnson, Deceased, respondent.

Richard J. Chadwick, Minneapolis, for Washington County, appellant (C6–92–2406), respondent (C8–92–2472).

Lawrence J. Hayes, Jr., Eagan, for South Washington County School Dist. No. 833, respondent (C6–92–2406), appellant (C8–92–2472).

Considered and decided by NORTON, P.J., and KALITOWSKI and FLEMING,* JJ.

## OPINION

NORTON, Judge.

A jury found appellants Independent School District No. 833 and Washington County negligent in the wrongful death of a child. Appellants challenge the judgment in favor of respondent and the denial of their post-trial motions. We affirm the verdict against the District, reverse the verdict against the County, because it has immunity from this wrongful death claim, and remand for recalculation of pre-verdict interest.

### FACTS

On June 14, 1990, seven-year old Brandon Johnson and his daycare class went swimming at Lake Elmo Park Reserve, where appellant Washington County ("County") built and maintained a swimming pond that has a sand beach and sand bottom. Although the pond water is filtered, it remains cloudy, making it possible to see only about one foot below the surface. The swimming area was not roped off based on swimming ability. On June 14, 1990, there were five lifeguards on duty, supervised by a head lifeguard, Colleen Crane.

Brandon's daycare provider was appellant South Washington County School District No. 833 ("District"). Four District daycare employees planned the trip and were to supervise the children at the Park Reserve.

Thirty-seven children went on the trip. Before taking the trip, the daycare staff did not test the children's swimming ability; they relied upon the children to tell them their swimming ability. The staff told the children to select buddies and stay with their buddy at all times. The children were divided into four groups for supervision, and Brandon was in Natasha Dalum's group.

The bus arrived at the Park Reserve at about 1:35 p.m.. When the children got out, the staff reminded them to stay with their buddies. Daycare staff testimony indicated that once the children were in the water, they were difficult to keep track of among the approximately three hundred other children in the pond.

Brandon was last seen at 1:50 p.m. by Kerry Keyser, one of the daycare employees, who saw Brandon in the shallow portion of the swimming area. Keyser told Brandon to find his buddy. At 1:55, a safety break was called and staff members took a count of children in their groups. When Dalum noticed Brandon was not present, she started to inquire of other staff members. Meanwhile, the head lifeguard, Colleen Crane, obtained a description of Brandon, found out where he was last seen, and went to the lifeguard shack to tell other lifeguards.

Crane then organized people to form a human chain to walk across the swimming area. The chain fragmented into several parts. About ten minutes later, another complete human chain was organized and on the first sweep, Brandon was found, submerged in about four feet of water. About twenty minutes had gone by since Brandon was reported missing.

Brandon's father, respondent David Johnson, as trustee, sued the District and County for wrongful death, alleging negligence. The jury, by special verdict, found the District was 40% negligent and the County was 60% negligent. The jury awarded respondent $1,007,857.84. The trial court denied the District's motions for new trial and remitti-

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap- pointment pursuant to Minn. Const. art. VI, § 10.

tur, and the County's motions for JNOV and new trial. Judgment was entered on November 25, 1992, awarding respondent $200,000 [1] from the County and $923,801.07 from the District, including $807,857.84 in damages and $111,354.07 in interest.

## ISSUES

I. Did the trial court err by not according Washington County tort immunity under Minn.Stat. § 466.03, subd. 6e (1988)?

II. Did the trial court err by denying appellants' new trial motions on the grounds of improper admission of evidence?

III. Did respondent's counsel's final argument constitute misconduct warranting a new trial?

IV. Did the trial court err by denying remittitur and by denying appellants' new trial motion on the grounds the damages were excessive?

V. Did the trial court err by awarding pre-verdict interest on the School District's portion of the judgment?

## ANALYSIS

### I. County's Tort Immunity

■ The County argues the trial court erred by failing to accord it immunity from the wrongful death claim. We agree and reverse.[2]

Except for specially enumerated limitations, municipalities are liable for their torts. Minn.Stat. § 466.02 (1988). The statute limits a municipality's tort liability in parks and

1. The trial court limited the County's liability pursuant to Minn.Stat. § 466.04, subd. 1 (1988), which provides an award against a municipality may not exceed $200,000 when the claim is one of death by wrongful act or omission.

2. Respondent contends the County failed to preserve the issue of immunity for appeal. While it is true Minn.Stat. § 466.03 (1988) contains 17 exceptions to a municipality's tort liability, only subdivision 6e, entitled "Parks and recreation areas," is pertinent to this case. *Id.* Given that Minnesota is a notice pleading state, the County's allegation in its answer that respondent's claim is barred by section 466.03, even though not citing subdivision 6e specifically, provided respondent with sufficient notice.

recreation areas, exempting the municipality from liability for:

[a]ny claim based upon the construction, operation, or maintenance of any property owned or leased by the municipality that is intended or permitted to be used as a park, as an open area for recreational purposes, or for the provision of recreational services * * * if the claim arises from a loss incurred by a user of park and recreation property or services. Nothing in this subdivision limits the liability of a municipality for conduct that would entitle a trespasser to damages against a private person.

Minn.Stat. § 466.03, subd. 6e (1988).

Respondent's claim against the County is based on the County's operation and maintenance of the Lake Elmo Preserve. The Lake Elmo Preserve's pond is "property * * * intended or permitted to be used as a park * * * for the provision of recreational services." *Id.* Moreover, respondent's claim arose from Brandon's use of the park. Accordingly, the County is immune from respondent's claim unless its conduct "would entitle a trespasser to damages against a private person." *Id.*

■ The general standard of care for trespassers applies to a child accompanied by adults in the Lake Elmo Preserve. *See Sirek v. State, Dep't of Natural Resources*, 496 N.W.2d 807, 811 (Minn.1993) (applying the Minnesota Tort Claims Act [3]). A landowner is liable to a trespasser under the following circumstances:

3. In defining the general duty owed by state agencies to state park visitors, the Minnesota Tort Claims Act grants limited immunity by providing that the state, its agencies, and its employees are not liable for

a loss incurred by a user arising from the construction, operation, or maintenance of the outdoor recreation system * * * *except that the state is liable for conduct that would entitle a trespasser to damages against a private person.* Minn.Stat. § 3.736, subd. 3(h) (1992), *quoted in Sirek*, 496 N.W.2d at 809 (emphasis added). The supreme court's construction of the emphasized language in *Sirek*, which is similar to the language in section 466.03, subd. 6e, controls our analysis of the immunity issue.

A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of land, is subject to liability for bodily harm caused to them by an artificial condition of the land, if

(a) the condition

(i) is one which the possessor has created or maintains and

(ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespassers and

(iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and

(b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

Restatement (Second) of Torts § 335 (1965); *see also Sirek*, 496 N.W.2d at 810 (applying section 335). Under this standard, the *Sirek* court stated a landowner

will be liable only for failing to exercise reasonable care to warn trespassers about hidden, artificial dangers created or maintained by the landowner. The landowner has no duty to eliminate these conditions from the land in order to accommodate trespassers but only to give them adequate warning. In so doing, however, a landowner is "entitled to assume trespassers will realize that no preparation has been made for their reception and will, therefore, be on the alert to observe the conditions which exist upon the land."

*Sirek*, 496 N.W.2d at 810 (citations omitted).

The trial court denied the County immunity because the County "created an artificial swimming hole and then hired lifeguards * * * to watch over the people swimming." Respondent argues the elements of section 335 are satisfied. Specifically, he contends the pond was an artificial condition that had

three hidden dangers: (1) the pond was not roped off according to swimming ability; (2) buoys placed to mark water outlets at the pond's bottom led swimmers to believe they indicated depth; and (3) the lifeguard's ineptness could not be expected to be discovered.

■ We disagree and conclude the Lake Elmo Preserve pond is not an artificial condition that precludes giving the County tort immunity under section 466.03. "Changes in natural environments do not create an 'artificial' condition where the affected terrain duplicates nature." *Henry v. State*, 406 N.W.2d 608, 611 (Minn.App.1987), *pet. for rev. denied* (Minn. Aug. 12, 1987). The pond is only six feet deep, has a gradually sloping sand bottom, and has no drop-offs or unusual currents. Further, it is unlikely the lack of ropes or the presence of buoys will by themselves cause death or serious harm to trespassers. Moreover, the conditions at the Lake Elmo Preserve are not of such a nature that trespassers will fail to discover them. *See* Restatement (Second) of Torts § 335(a)(ii), (iii); *Sirek*, 496 N.W.2d at 812 (recovery permitted only where the condition is hidden or otherwise non-obvious); *Lee v. State, Dep't of Natural Resources*, 478 N.W.2d 237, 239 (Minn.App.1991) ("artificial condition must pose an unreasonable risk that children will not discover or will not realize it is a risk"), *pet. for rev. denied* (Minn. Feb. 10, 1992); *see also* Restatement (Second) of Torts § 339 cmt. i & j (1965) (no duty of landowner to prevent dangers that are obvious to children). Accordingly, the trial court improperly failed to accord the County immunity from respondent's wrongful death claim.

■ Respondent argues the heightened standard of care for child trespassers applies to these circumstances.[4] We disagree.

---

4. The standard for child trespassers is found in Restatement (Second) of Torts § 339 (1965):

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason

to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk in-

When children are accompanied by adults, like the daycare providers in this case, in places where unsupervised children are not customarily found, the landowner is subject to the general standard of care owed to trespassers under Restatement (Second) of Torts § 335 rather than the higher standard owed to children under Restatement (Second) of Torts § 339. *See Sirek*, 496 N.W.2d at 811. Hence the standard of care enunciated in section 335 is proper in this case.

In a broader sense, imposing tort liability on the County in this case may swallow the immunity the legislature envisioned by section 466.03, subd. 6e. It would subject municipalities to "practically unlimited liability" and require "childproofing" many city parks. *See Sirek*, 496 N.W.2d at 811. Therefore public policy also buttresses our decision.

Because we conclude the County is immune from liability in this case, we do not address the question whether Minn.Stat. § 466.04, subd. 1 (1988) restricts the County's liability to $200,000 or $600,000 in damages. Similarly, our holding that the County is immune from liability renders moot the County's argument that insufficient evidence supported the jury's finding that its conduct caused Brandon's death.

## II. Evidentiary Rulings

■ Appellants challenge three evidentiary rulings. Rulings on evidentiary questions are within the trial court's sound discretion and will only be reversed when that discretion has been clearly abused. *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn.1983).

■ First, the District argues the trial court erred by admitting three termination letters written by the District to Natasha Dalum, Heidi Cadalbert, and Sandy Wolfgram. We disagree. The trial court acted within its discretion by admitting the letters as party admissions. *See* Minn.R.Evid. 801(d)(2) (statement is not hearsay if offered against party and is party's own statement).

The letters were written on District letterhead, stated employee negligence and unsatisfactory performance as grounds for termination, and were signed by the Director of Community Education. Under these circumstances, the trial court acted within its discretion by admitting the termination letters.

■ Second, the District claims the trial court improperly admitted evidence of Wolfgram's conduct after Brandon's drowning. During her employment termination proceeding, Wolfgram lied and told the District she could not meet with her supervisor to discuss the June incident because she had a doctor appointment. On a different occasion, she hid in the bathroom to avoid meeting with the District's attorney. The District contends the evidence of Wolfgram's conduct is not relevant, or if relevant, it is unduly prejudicial, and therefore a new trial should be granted. We disagree.

Wolfgram's conduct showed her lack of credibility; thus the evidence of her conduct was properly admitted under Minn.R.Evid. 608(b) which allows a witness to be examined about specific instances of untruthfulness. By inference, Wolfgram's conduct during her employment termination proceedings impeached the credibility of her statements in which she denied acting negligently. The jury could have inferred from Wolfgram's conduct that she was aware of her negligence. There was very little testimony—only two pages of transcript—about her conduct. The probative value of this evidence substantially outweighed the danger of unfair prejudice. *See* Minn.R.Evid. 403. Under these circumstances, we cannot say the trial court abused its discretion by admitting evidence of Wolfgram's conduct.

■ Third, the District and the County claim admission of Kristina Johnson's letter amounted to reversible error and requires a new trial. The letter outlined the emotional distress and grief that Kristina and her parents experienced upon learning that Brandon

---

volved in intermeddling with it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

had drowned. The letter also recounted Kristina's and her parents' lingering feelings of grief over Brandon's death. At the end of the letter, Kristina advised children not to blame themselves for the death of a loved one.

While the letter primarily dealt with Kristina's reaction to her brother's death, it also showed her close relationship with Brandon; Kristina described Brandon as "someone really close" and my "brother gone forever." The letter therefore provided evidence of Kristina's excellent relationship with Brandon, which provides support for future economic harm Kristina may suffer from her brother's loss. *See Tiedeken v. Tiedeken,* 363 N.W.2d 909, 910 (Minn.App.1985) ("wrongful death action is to compensate those dependent upon the decedent for economic harm they suffered"). Moreover, the prejudice arising from the letter was tempered by the trial court's instruction to the jury not to award damages based on sympathy. *See Flatin v. Lampert Lumber Co.,* 298 Minn. 577, 580 n. 3, 215 N.W.2d 783, 785 n. 3 (1974) (jury is presumed to follow the trial court's instructions). Under these circumstances, the trial court acted within its discretion by admitting Kristina's letter.

### III. Attorney Misconduct

■ The question of granting of a new trial for attorney misconduct is governed by no fixed rules, but rests almost wholly within the trial court's discretion. *Wild v. Rarig,* 302 Minn. 419, 433, 234 N.W.2d 775, 785 (1975), *cert. denied* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976). A pattern of repeated attorney misconduct may necessitate a new trial, even where no one incident would be sufficiently prejudicial to require a new trial. *Nadeau v. County of Ramsey,* 277 N.W.2d 520, 524 (Minn.1979). "The primary consideration in determining whether to grant a new trial is prejudice." *Rarig,* 302 Minn. at 433, 234 N.W.2d at 786.

■ Appellants argue three incidents of attorney misconduct warrant a new trial. First, the District contends respondent's trial counsel improperly argued during closing argument that Kerry Keyser, one of the District's employees, sent Brandon to his death by requesting he look for his buddy—who was one foot taller than Brandon—in deep water. A review of the transcript, however, shows respondent's trial counsel at closing argument made statements inferring Keyser negligently told Brandon to find his buddy instead of Keyser herself helping Brandon find his missing buddy. Brandon ultimately left the area where Keyser had been and was found in four feet of water. Given that juries are permitted to draw reasonable inferences from the evidence, *see Johnson v. Lorraine Park Apartments, Inc.,* 268 Minn. 273, 279, 128 N.W.2d 758, 762 (1964), respondent's counsel's argument, which was supported by circumstantial evidence, does not amount to reversible error.

■ Second, the District argues respondent's counsel improperly questioned Dalum about why she was reinstated as a daycare supervisor with the District. In pretrial proceedings, the trial court limited the scope of examination into Dalum's termination hearing. Nonetheless, respondent's counsel inquired whether Dalum had been reinstated because she had blamed her superiors for inadequate training and preparation. While we acknowledge the propriety of counsel's questioning was suspect, we cannot conclude that the trial court abused its discretion by denying the District and the County a new trial on this ground. The trial court sustained the District's objections, Dalum did not answer the question, and the District's counsel did not request a corrective action.

■ Third, the District claims respondent's counsel's closing argument improperly sought to award punitive damages to respondent. During closing argument, respondent's counsel characterized the District and County's conduct as "despicable," "indecent," "almost immoral," and "borders on the criminal." Respondent's trial counsel also told the jury if they award a figure like $1.5 million, "perhaps there will be no more Brandon Johnsons and people might start listening to jurors who hear despicable cases like this." The District argues this misconduct requires a new trial.

■ Punitive damages are not permitted against school districts and municipalities. *See* Minn.Stat. § 466.04, subd. 1 (1988). Re-

spondent's counsel's statements during closing argument come very close to the level of misconduct that warrants granting a new trial. In particular, the remarks seem to focus on punishing the District and the County for its outrageous and reckless conduct; such punishment is not proper. Nonetheless, given that the trial court instructed the jury that the purpose of damages is not to punish defendants, and given this court's standard of review, we conclude the trial court properly exercised its discretion by denying appellants' new trial motions.

## IV. Excessive Damages

The District and the County contend the trial court erred by failing to grant a new trial based on excessive damages. This court will not interfere with a trial court's denial of a new trial motion on the grounds of excessive damages unless there has been a clear abuse of discretion. *McPherson v. Buege*, 360 N.W.2d 344, 347 (Minn.App.1984). Similarly, a motion for remittitur rests within "the sound discretion of the trial court whose ruling will not be disturbed on appeal in the absence of a clear abuse of discretion." *Newmaster v. Mahmood*, 361 N.W.2d 130, 133 (Minn.App.1985).

In determining whether a verdict is excessive, the court must consider the evidence, demeanor and circumstances of the parties. *McPherson*, 360 N.W.2d at 347. "The test for setting aside a verdict as excessive is whether it shocks the conscience." *Verhel v. Independent Sch. Dist. No. 709*, 359 N.W.2d 579, 591 (Minn.1984). "The trial court must leave the plaintiff with the highest dollar verdict permissible under the evidence." *Newmaster*, 361 N.W.2d at 133.

We do not find sufficient grounds to conclude the damages awarded by the jury are excessive as a matter of law. It is true the damages found by the jury were generous, but they were not beyond the scope of wrongful death verdicts for children. *See May v. City of Grosse Pointe Park*, 122 Mich.App. 295, 332 N.W.2d 411, 412 (1982) (over one million dollar damage award to estate of deceased 13–year–old boy). Appellants, however, argue the award exceeded the reasonable amount of "pecuniary loss."

*See* Minn.Stat. § 573.02, subd. 1 (1988) (damages for wrongful death are limited to the "pecuniary loss resulting from the death, and shall be for the exclusive benefit of the surviving spouse and next of kin"). We disagree. The trial court properly instructed the jury to award compensation for pecuniary loss based on the counsel, guidance, advice, assistance and protection which Brandon would have given his parents and his sister. *Minnesota Practice*, CIV JIG 451.1 (1986). No precise formula exists to calculate the value of these losses. The trial testimony and evidence shows the very close and loving relationship Brandon had with his parents and Kristina. Moreover, the trial court instructed the jury not to award damages based on sympathy. Accordingly, we cannot say that under the circumstances the trial court abused its discretion by declining to grant a new trial for excessive damages or to order remittitur.

## V. Pre-verdict Interest

The District contends the trial court erred by awarding pre-verdict interest to respondent. We agree and remand for further proceedings consistent with this opinion. Pre-verdict interest on pecuniary damages shall be computed from the date the case commences. Minn.Stat. § 549.09, subd. 1(b) (1988). However, "except as otherwise provided by contract or allowed by law," pre-verdict interest shall not be awarded on judgments for future damages. *Id.*

The trial court awarded respondent $94,200.22 in pre-verdict interest from the District. It awarded interest, however, on the entire $807,857.84 award and did not determine what portion of the verdict constituted future damages. Under these facts, we remand to the trial court to recalculate the interest award to exclude interest on the portion of the verdict that represents future damages.

## DECISION

The trial court erred by not according the County immunity from respondent's wrongful death claim. It acted within its discretion by denying appellants' new trial motions on

the grounds of improper admission of evidence and improper conduct of respondent's trial court counsel. The trial court properly denied both the District's motion for remittitur and its new trial motion for excessive damages. It erred, however, by awarding interest on future damages and we remand for proper calculation of interest in accordance with our decision.

**Affirmed in part, reversed in part and remanded.**

FLEMING, Judge (*concurring in part, dissenting in part*).

I agree with the majority on all issues except whether respondent's attorney's misconduct was reversible error. I respectfully dissent on this issue and would remand for a new trial. Throughout the trial, but particularly during his closing argument, respondent's trial attorney made inappropriate and inflammatory comments that made an impartial verdict impossible. *See Sievert v. First Nat'l Bank in Lakefield*, 358 N.W.2d 409, 416 (Minn.App.1984) ("pattern of repeated attorney misconduct may necessitate a new trial, even where no one incident would be sufficiently prejudicial").

Respondent's attorney's characterization of appellants' conduct on June 14, 1990, as "despicable," "indecent," "almost immoral," and bordering on "gross criminal negligence" improperly implied appellants must be punished for Brandon Johnson's death. *See* Minn.Stat. § 466.04, subd. 1 (1988) (punitive damages not permitted against school districts and municipalities). Other comments by respondent's attorney impermissibly evoked the sympathy and prejudice of the jury. *See Tiedeken v. Tiedeken*, 363 N.W.2d 909, 910 (Minn.App.1985) (damages in wrongful death action are limited to pecuniary loss). Under these circumstances, I believe the aggregate effect of respondent's trial attorney's misconduct warrants remanding for a new trial against South Washington County School District.