# WALTER OELKE v. COUNTY OF FARIBAULT.

110 N. W. (2d) 145.

June 30, 1961—No. 38,136.

*Putnam, Spencer & Willette* and *Seifert, Johnson & Hand,* for appellant.

*Frundt & Hibbs,* for respondent.

MURPHY, JUSTICE.

This is an appeal from an order of the district court affirming an order of the Board of County Commissioners of Faribault County establishing County Ditch No. 80. The appellant, Walter Oelke, is a property owner affected by the establishment of the ditch. The appeal to the district court was taken pursuant to Minn. St. 106.631, subd. 4, which provides in part:

"* * * The court shall examine the whole matter and receive evidence to determine whether the findings made by the county board can be sustained. At such trial the findings made by the county board shall be prima facie evidence of the matters therein stated, and the order of the county board shall be deemed prima facie reasonable. If the court shall find that the order appealed from is lawful and reasonable, it shall be affirmed. If the court finds that the order appealed from is arbitrary, unlawful, or not supported by the evidence, it shall make such order to take the place of the order appealed from as is justified by the record before it or remand such matter to the county board for further proceeding before the board."

This appeal is the most recent chapter in a long and so far unsuccessful attempt to establish and construct watercourse improvements to an existing ditch drainage system in Faribault County. The attempt began in 1946 when the petitioners or their predecessors in interest asked the District Court of Faribault County for relief from a condition which, it is said, occurred annually causing their land to be flooded. It is unnecessary to discuss at length the background of this litigation, since it is dealt with by our decision in a former appeal. In re County Ditch No. 31 and Judicial Ditch No. 13, Faribault County, 244 Minn. 543, 70 N. W. (2d) 853. Since that decision, the matter

has been before the district court in subsequent proceedings at least three times. It is sufficient to say that the project relates to Judicial Ditch No. 13 and County Ditch No. 31, which are part of a large drainage system extending over many miles and reaching into the State of Iowa. County Ditch No. 31 was established in 1915. Its outlet is in Coon Creek about 5 miles south of a point where that stream enters the Blue Earth River. Judicial Ditch No. 13 was established in 1916. It joins County Ditch No. 31 at a point about 3,700 feet from its outlet into Coon Creek. Coon Creek is a meandering prairie stream of limited capacity which flows through flat land a considerable distance before it reaches a point where it acquires a more rapid fall and well-defined banks. Through the years subsequent to the establishment of these ditches, many private drains and some public drainage systems were constructed so as to empty into one or the other of these two ditch systems. They have not been kept in repair. Because of the flat terrain and the additional burden of thousands of acres added to the drainage area, the outlet into Coon Creek has become inadequate. The county board found that this outlet annually overflows and inundates adjoining lands and highways, causing loss to owners of said lands and creating a condition detrimental to the public health and welfare. To relieve this condition the county board ordered the establishment of Faribault County Ditch No. 80 with the view of improving and enlarging the ditch and watercourse. It appears from the reports of engineers upon which the county board relied that by cleaning, deepening, and widening County Ditch No. 31 and extending the outlet about 1½ miles to a point where the fall in Coon Creek increases appreciably, the situation could be corrected or substantially improved. The project comprehends the widening and deepening of the outlet of Judicial Ditch No. 13 so as to give the landowners along that ditch the benefit of the new proposed outlet.

On appeal to the district court it was found that the order establishing the system was lawful and reasonable; that the proceedings conformed to jurisdictional and procedural requirements; that "the benefits to be derived from the construction of said ditch are greater than its total cost, including damages awarded"; that the project is necessary; that the project is practicable and feasible, will be of public benefit and

utility, and will promote public health and welfare. The court accordingly made its order affirming the action of the board of county commissioners and dismissing the appeal. The appeal before us is from the foregoing order.

The appellant asserts here (1) that the court erred in finding that the benefits of the improvement were greater than the estimated cost, including damages; (2) that the viewers adopted an erroneous theory in assessing benefits and damages; and (3) that the trial court erred in refusing the appellant the right to examine one of the viewers as to each tract and parcel of land assessed for benefits and damages.

■ In attempting to establish that the order of the county board is arbitrary, unlawful, and not supported by the evidence, the appellant in the trial below called as witnesses two of the viewers, three landowners, a civil engineer, and the county highway engineer of Faribault County. The substance of the landowners' testimony was to the effect that the assessments as to particular tracts were, in their opinion, arbitrary, unequal, and disproportionate to benefits to be received from the improvement. The county highway engineer was of the opinion that the estimated cost of repair or betterment of bridges involved was "a little low." The civil engineer was of the same opinion. The civil engineer expressed the further view that the cost of removing stumps and trees would be greater than that estimated by the engineer's report. It is not clear from the record that he was familiar with all of the details of this project, including the number and size of trees and stumps to be removed. He expressed the further view that the cost of pipes and culverts would be greater than that contemplated by the engineer's report. He agreed, however, that the outlet of Judicial Ditch No. 13 was inadequate. On cross-examination he testified:

"Q. And have you seen Number 13 in the last year or two?

"A. I prepared a cleanout of 13 from the source of the open ditch down to the north line of Section 31, Seely Township, a couple of years ago.

"Q. Yes. That wasn't carried out, was it?

"A. No, it was not.

"Q. And Number 13 is still in that same bad state of repair, isn't it?

"A. Yes.

"Q. Or even worse?

"A. It could be worse by now. I haven't seen it in the last year or more.

"Q. * * * Now, are you familiar with the operation of Number 13, as it now exists, where it comes into 31, as to how it operates in wet weather and backs up against the tile line?

"A. I have not observed it at the time of high water in recent years.

"Q. Do you know that, from information you have, to be a fact, that in wet seasons, that Number 13 is filled with back water from the junction of 31, and the tile lines at the lower end of 13 are submerged?

"A. They were the last work I did on them.

"Q. That condition is still the same, isn't it?

"A. I imagine it is.

"Q. As presently constituted, is this a fair statement, that Number 13 has a poor outlet and inadequate outlet?

"A. You mean as it now exists?

"Q. Yes.

"A. Well, the outlet from the junction of 31 to the road is, the last time I looked at it it was filled up, had no depth at all, three to four feet is the maximum, and sand bars."

Minn. St. 106.201, subd. 2, provides:

"If the board or court shall find that the engineer's and viewers' reports have been made and all other proceedings in the matter had in accordance with law, that the estimated benefits are greater than the total estimated cost, including damages, that the damages and benefits have been duly determined, that the proposed drainage system will be of public utility and benefit, and will promote the public health, that the proposed system is practicable, and that such reports as made or amended are complete, just and correct, then the board or court shall by order containing such findings, establish the drainage improvement as reported or amended, and adopt and confirm the viewers' report as made or amended."

The appellant has failed to establish that the estimated benefits are less than the total estimated costs, including damages. The testimony of the landowners and other witnesses has not reached this issue. It may be assumed that some of the figures for costs with reference to repair or betterment of bridges were low, since the proceedings have been going on for some length of time and the cost of material has increased. The appellant has failed, however, to produce any figures to show that the total benefits were less than the actual costs and damages assessed. Whether the total benefits were less than the actual costs and damages assessed was a fact question to be determined by the court. In In re Petition for Repair of County Ditch No. 1, Faribault County, 237 Minn. 358, 362, 55 N. W. (2d) 308, 311, we said:

"Whether land involved in a drainage proceeding has been benefited is a question of fact. As in the case of any other question of fact, there must be competent evidence to sustain a finding that there are benefits. On appeal, we review the evidence to determine if there is sufficient evidence to sustain the finding the same as we do in any other case. Where the evidence is conclusive against the finding, it cannot stand."

Other cases to the same effect are In re Improvement of County Ditch No. 1, Yellow Medicine County, 241 Minn. 6, 62 N. W. (2d) 80; and In re Establishment of Judicial Ditch No. 75, Polk County, 172 Minn. 295, 215 N. W. 204, 216 N. W. 229.

■ From an examination of the record we conclude that the appellant's claim that the viewers adopted an unlawful method of assessment is without merit. The qualifications of the viewers are not questioned. There was evidence from which the court could find that the assessments against the land represented the agreed opinion of the viewers based upon their independent observations, knowledge, and experience as to the benefits the property would derive from the improvement. The determination was not made on the basis of a percentage of assessments and damages fixed in the original proceedings. We are satisfied that the court could find from the record that the viewers conformed to the directions contained in In re County Ditch No. 31 and Judicial Ditch No. 13, 244 Minn. 543, 557, 70 N. W. (2d) 853, 862, where it was said:

"* * * While there may be no objection to referring to the original assessment for benefits, along with other evidence of benefits, the benefits from improving the common outlet, unlike the cost of repairs of the ditch which are spread pro rata on the basis of benefits theretofore determined, may not be based pro rata on such original assessment. Costs for improving an outlet, the same as costs for improving a ditch, must be assessed against the land benefited based upon an independent determination of such benefits."

■ The questions presented by this particular appeal are, as indicated by §§ 106.201, subd. 2, and 106.631, subd. 4, whether the estimated benefits are greater than the total estimated cost, including damages, and whether the order appealed from is lawful and reasonable. From the record it appears that the essence of the appellant's complaint is that because there may be evidence to support a finding that assessments as to particular tracts are out of line the entire proceeding should be vitiated. In answer to this objection it is only necessary to point out that, if the method adopted by the viewers resulted in an arbitrary and unequal assessment as to particular property, the owner has the right to appeal and have the jury pass upon the merits of his claim under the terms of § 106.631, subds. 1, 2.

■ It is next contended by the appellant that the court erred in denying his asserted right to examine the viewers as to each tract and parcel of land assessed. Error is predicated on the ruling of the trial court limiting appellant's examination of one of the viewers, I. G. Stauffenberg. The drainage area involved includes 949 separate 40-acre tracts. After this viewer had testified upon examination by appellant with reference to a considerable number of these tracts, it became apparent that the witness did not have an independent recollection of the low or wet places on each and every parcel. When it appeared to the court that counsel for the appellant proposed to examine the viewer with reference to his recollection as to each particular tract, the court halted the examination. The witness had testified:

"Well, I don't want to make any statement that I remember definitely where the low or wet land is located on any forty, because I didn't make any attempt to remember those things. We examined it

when we were out there on the land and we decided, when we were on the land, what our opinion was of it and the figures we wanted to put on it. So I didn't make any attempt to remember the details."

The trial court was probably justified in feeling that a continuation of the examination would add nothing of material value by way of evidence bearing upon the issues. The court in its memorandum pointed out that the examination was limited only as to this one witness and continued:

"* * * Counsel was invited to pursue this line of questioning with the other two viewers and to go into any other matters with all three of the viewers. Counsel for respondent announced that one of the other viewers, Mr. Leland, would probably have some knowledge as to particular wet spots on particular forties, but counsel for appellant chose not to call him."

Under the circumstances we cannot agree that there was an abuse of the court's discretion in its limiting the examination of the witness or that there has been prejudice to the appellant by reason of the court's action. We agree with the trial court that the evidence sought to be elicited could only be cumulative and could not have possibly brought about any different result in the litigation. Spensley v. Oliver Iron Min. Co. 216 Minn. 451, 13 N. W. (2d) 425; see, also, Mitton v. Cargill Elev. Co. 124 Minn. 65, 144 N. W. 434.

Affirmed.