ESTHER BOHACH v. GENE THOMPSON
AND ANOTHER.
DUAINE ESPEGARD, SPECIAL ADMINISTRATOR OF
ESTATE OF NICK HENRY BOHACH,
THIRD-PARTY DEFENDANT.

239 N. W. 2d 764.

March 5, 1976—No. 45402.

*Peterson & Holtze* and *Robert C. Holtze,* for appellant.

*Padden, Dickel, Johannson, Wall & Taylor* and *Kenneth F. Johannson,* for respondents.

Heard before Todd, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

MacLAUGHLIN, JUSTICE.

The sole issue presented on this appeal is whether the trial court abused its discretion when it admitted defendants' expert opinion testimony concerning the speed of appellant's vehicle. We hold that there was no abuse of discretion.

Plaintiff, Esther Bohach, commenced an action for damages sustained in a collision between the car in which she was riding as a passenger, driven by her husband, Nick Bohach, and a truck owned by defendant Gene Thompson and driven by defendant William Summers. Defendants impleaded Nick Bohach, appellant here, as a third-party defendant. An agreement was reached as to the amount of damages, leaving the only issue at trial the comparative fault between defendants and appellant. The jury found defendants 60 percent causally negligent and appellant 40 percent causally negligent. Appellant's motion for judgment notwithstanding the verdict or a new trial was denied, and this appeal followed.

The accident out of which this litigation arose occurred in Polk County at 4:30 p. m. on September 17, 1970, a clear, sunny day. Defendant Summers was driving defendant Thompson's potato truck south on Highway No. 220, which is a straight and level 22-foot-wide concrete highway with 9-foot shoulders on both sides. Summers, desiring to make a left-hand turn into the private driveway of Thompson's farm, pulled the truck off onto the right-hand shoulder of the road to allow a car behind him to pass. Summers then turned on his left turn signal, looked into his rear-

view mirror, and observed another car coming 500 to 600 feet behind him. Believing he had enough time, Summers proceeded to make the left-hand turn. Appellant's car collided with the rear of the truck on the left-hand side of the road. Summers estimated appellant's car to be "coming a lot more faster than 50 miles per hour."

From appellant's perspective, appellant was traveling south on Highway 220 when he observed a truck with flashing lights on the right-hand shoulder of the road approximately one-quarter mile ahead of him. Appellant saw the car ahead of him pull around the truck, so he prepared to do the same. When he first saw the truck, appellant testified that he "was going about 60" and that he slowed down a little when he got closer to the truck. Plaintiff, Esther Bohach, testified that when she and her husband first saw the truck, their car was traveling about 60 miles per hour, but it "slowed up to about 50 miles an hour" before attempting to pass. As appellant pulled into the left lane to pass the truck, it turned left in front of him. Appellant slammed on his brakes but skidded into the rear end of the truck.

After the accident, a Minnesota Highway Patrol officer took photographs of the road and the damaged vehicles. The officer also measured the skid marks produced by appellant's car to be 150 feet. On September 4, 1973, nearly 3 years after the accident, Dr. Robert McDougal began investigating the accident at the request of defendants. Dr. McDougal examined photographs of the accident and tested the highway surface to determine its coefficient of friction. At trial Dr. McDougal testified that in his opinion appellant's automobile was traveling at least 65 miles per hour at the time of brake application. This calculation was based upon a skid-mark factor of 58 1/2 miles per hour and a deformation factor of 8 miles per hour. Dr. McDougal's opinion was admitted over the objection of appellant.

In Murphy v. Hennen, 264 Minn. 457, 464, 119 N. W. 2d 489, 493 (1963), we said:

"The admissibility of a claimed expert's opinion is within the

discretion of the court, and any ruling will not be reversed unless there is an abuse of discretion which results in prejudice to the objector."

Therefore, the question on this appeal is whether the trial court abused its discretion in admitting the expert opinion.

Although an estimate of automobile speed is generally viewed as a subject on which a lay person "gifted with reasonable intelligence, given a fair opportunity to observe, and having ordinary experience with moving vehicles may give opinion testimony," LeMieux v. Bishop, 296 Minn. 372, 378, 209 N. W. 2d 379, 383 (1973), it has also been held by this court to be a subject on which, under proper circumstances, expert testimony may be elicited. Moeller v. St. Paul City Ry. Co. 218 Minn. 353, 16 N. W. 2d 289 (1944). However, "[i]n view of the importance normally accorded scientific training and knowledge" by a jury, Sanchez v. Waldrup, 271 Minn. 419, 430, 136 N. W. 2d 61, 68 (1965), this court has consistently preferred eyewitness testimony and has allowed expert testimony on speed only where such eyewitness testimony is "nonexistent or of little aid to the jury in resolving the issue," LeMieux v. Bishop, 296 Minn. 377, 209 N. W. 2d 383. Consequently, we held in LeMieux that the test for determining whether an expert's opinion on the speed of an automobile is admissible depends on (296 Minn. 378, 209 N. W. 2d 383)—

"* * * (1) whether there exists sufficient factual data to assure a reasonably complete and accurate reconstruction of the accident without indulging in speculation; and (2) more importantly, whether such opinion testimony will assist the triers of fact."

Appellant argues that there was "undisputed eyewitness testimony" concerning speed at the trial and therefore no need to introduce expert testimony on the subject. The eyewitness testimony to which appellant refers is the testimony of both plaintiff, Esther Bohach, and appellant, Nick Bohach, to the effect that they were going less than 60 miles per hour when the truck

turned in front of them. However, in LeMieux there was eyewitness testimony from the defendant that "he was driving about 50 miles an hour" and from his passenger "that he was not 'going fast'" 296 Minn. 375, 209 N. W. 2d 381. Despite the existence of this eyewitness testimony, we held that the expert opinion on speed was admissible and stated (296 Minn. 378, 209 N. W. 2d 383):

"* * * [W]hen viewed in the context of our adversary system, where eyewitness testimony as to speed is either nonexistent or unsatisfactory as to one or the other of the adversaries, it is proper to seek the aid of an expert."

When the instant case is "viewed in the context of our adversary system," it is clear that the testimony of Mr. and Mrs. Bohach, both parties adverse to defendants, as to the speed of their automobile was wholly unsatisfactory to defendants. Therefore, it was not improper for defendants to seek the aid of an expert.

The remaining question is whether there were sufficient factual data to support the expert's opinion. There are two contested elements in the factual foundation for Dr. McDougal's expert opinion. First, Dr. McDougal did not begin to investigate or reconstruct the collision until 3 years after the accident. Thus, in calculating the coefficient of friction in his formula, he was forced to assume that the condition of the road when he personally tested it was substantially the same as when the accident occurred. Second, Dr. McDougal did not directly examine the automobiles involved in the accident. Thus, in calculating the speed of the automobiles at impact, he was forced to rely on photographs showing the nature and extent of deformation.

In Grapentin v. Harvey, 262 Minn. 222, 224, 114 N. W. 2d 578, 580 (1962), the expert witness assumed in his calculation of speed that the highway in question was a "regular concrete highway." After discussing the significance of an expert's actual knowledge of the condition of a highway, we concluded (262 Minn. 227, 114 N. W. 2d 582):

"* * * With this much variance depending upon the type of concrete—to say nothing of the presence or absence of gravel—the mere assumption of a 'regular concrete highway' seems to us too vague to permit an expert opinion on speed, under the circumstances here."

We reached a similar conclusion in Sanchez v. Waldrup, *supra,* where it was shown that the expert witness relied on general descriptions of the surface of the icy road where the accident occurred. In reversing and granting a new trial, we said (271 Minn. 430, 136 N. W. 2d 68):

"* * * Without more definite knowledge as to the true condition of the highway and use of a coefficient of friction that would be justified under the facts, the expert's opinion was of no value."

However, unlike the experts in Grapentin and Sanchez, Dr. McDougal personally tested the highway in question, and there was no evidence presented at trial that the condition of the highway had changed in any significant way from the time of the accident. Further, the alleged deficiencies in Dr. McDougal's factual basis go more to the weight of the expert's opinion than to its admissibility. As we stated in LeMieux (296 Minn. 382, 209 N. W. 2d 385):

"* * * [A]ny error in calculations or in the asssumption of facts or data upon which the opinion was based goes to the weight of the testimony, not to its admissiblity."

In summary, it appears that the alleged deficiencies were not oversights by Dr. McDougal but were conditions of which he was aware and which have not been shown from cross-examination, or other evidence, to have had any significant effect on Dr. McDougal's final opinion. As would be expected, these deficiencies were adequately brought to the jury's attention on cross-examination. Based upon the foregoing, we conclude that, while the admission of this testimony approaches the outer limits of

the trial court's discretion, there was no error in admitting the opinion testimony of Dr. McDougal.

Finally, appellant has alleged that Dr. McDougal improperly applied the formula which is used to determine speed in cases of this kind and that this error resulted in a miscalculation of appellant's speed. We note that this claim was not raised at the trial; was not made a part of appellant's post-trial motions; and was not ruled upon by the trial court. Therefore, following well-established principles of law, we decline to consider this argument for the first time on appeal.

Affirmed.