**In the Matter of the PETITION FOR IMPROVEMENT OF MURRAY COUNTY DITCH NO. 34.**

No. CX–98–2194.

Supreme Court of Minnesota.

July 27, 2000.

Rehearing Denied Aug. 29, 2000.

Jeff C. Braegelmann, Gislason & Hunter, L.L.P., New Ulm, for appellant.

Leland Bush, Tyler, for respondent.

Gerald W. Von Korff, Rinke-Noonan, St. Cloud, for amicus curiae.

Paul M. Malone, Murray County Atty., Slayton, for Murray County.

## OPINION

STRINGER, Justice.

Murray County Ditch 34 was originally constructed between 1914 and 1916 and runs for several miles through Skandia and Ellsborough Townships in Murray County, Minnesota. Its condition has substantially deteriorated since its construction. On September 14, 1993, respondents filed a petition for improvement of the ditch with the county drainage authority, requesting an improvement to the buried main tile system. After conducting a cost-benefit analysis required by Minn.Stat. § 103E.341 (1998), the drainage authority concluded that the benefits of the project exceeded its costs and ordered the improvement. In its cost-benefit analysis the drainage authority applied Minn.Stat. § 103E.215, subd. 6 (1998), providing that where an existing ditch needs repair and a petition for improvement pertains to a "separable" portion of the ditch, the cost of the repair is assessed against all property benefited by the entire drainage system, but the cost of the improvement is assessed only to those properties benefited by the improvement. *See* Minn.Stat. § 103E.215, subd. 6. Objecting property owners appealed the order to the district court, arguing that the cost of the project exceeded its benefits and the drainage authority incorrectly applied the statute because the section of the ditch designated for improvement was not separable from the entirety of the ditch, and therefore the costs of the project were unlawfully assessed against them. The district court and the court of appeals affirmed the drainage authority's order of improvement. On review here, we affirm.

Murray County Ditch 34 was constructed as a buried main tile system with 32 tile branches containing several miles of tile lines and approximately 600 feet of open ditch at the outlet. On September 14, 1993, respondents, the owners of land through which the ditch passes, filed a petition for the improvement[1] of the ditch with the Murray County Board of Commissioners stating that "over 200 acres of prime farmland is still underwater," and requesting authority to dig an open ditch replacing the buried main tile line "beginning [at] the main tile line and commencing to the outlet of the main tile line only." The County Board, acting as the drainage authority,[2] evaluated the petition[3] pursuant to Minn.Stat. § 103E.215, subd. 4 (1998),[4] and pursuant to Minn.Stat.

---

1. "Improvement" is "the tiling, enlarging, extending, straightening, or deepening of an established and constructed drainage system." Minn.Stat. § 103E.215, subd. 2 (1998).

2. "[T]he drainage authority or joint county drainage authority [has] jurisdiction over a drainage system or project." Minn.Stat. § 103E.005, subd. 9 (1998).

3. The drainage authority originally evaluated the petition and issued an order on June 28, 1996, establishing the proposed improvement. Appellants appealed the order to the Murray County District Court and the order was remanded for further proceedings to cure procedural defects. Upon remand, Sioux Engineering, Inc. and the viewers were reappointed to determine the estimates on the costs and benefits of the proposed improvement.

4. Minnesota Statutes § 103E.215, subd. 4 (1998), states, *inter alia*, that a petition for the improvement of a drainage system must be signed by either at least 26% of the owners of

§ 103E.215, subd. 5 (1998), appointed Sioux Engineering, Inc. (Sioux) to determine the costs of the improvement and to make a recommendation as to whether the ditch should be improved by construction of the open ditch or merely repaired to its original capacity. Sioux reported: "it is our opinion that the only method of re-establishing the drainage system's originally installed capacities is to replace the drain tile in its entirety * * * * with the construction of an open ditch." The report also stated:

> The existing drainage system is in need of repair, and the Petition for Improvement is for a separable part of the existing drainage system, consisting of the main branch. In this plan, the main branch * * * will be eliminated as a result of the improvement, and therefore, will not need to be repaired.

The report thus concluded that the existing drainage tile should be improved by the construction of an open ditch and that the portion of the ditch needing improvement was separable from the remainder of the drainage system.

■ Sioux's report also determined the total cost of the project, then broke the total into two components: the cost of repairing the ditch back to its original condition when construction was completed in 1916, and the cost of improving the efficiency of the ditch over and above its originally constructed capacity.[5] The re-

port estimated the cost of repairing[6] the separable part of the ditch to its originally constructed condition as $290,279.01 and the total cost of the entire improvement project as $593,565.43. The difference between the two calculations of $303,286.42 was the additional cost of improving the ditch beyond its originally constructed capacity.

■ The drainage authority also appointed three "viewers" to perform other statutorily mandated duties relating to the ditch project. For example, if the drainage authority determines that the original assessment of benefits to landowners as a result of the ditch do not reflect reasonable present day values, the viewers must redetermine the benefits and report the present day benefits[7] and damages[8] of the ditch. See Minn.Stat. § 103E.351, subd. 1 (1998). The present day estimated benefits are referred to as "redetermination" benefits and pursuant to Minn.Stat. § 103E.351, subd. 3 (1998), redetermination benefits are to be used in place of the original benefits "in all subsequent proceedings relating to the drainage system." Minn.Stat. § 103E.351, subd. 3.

The original assessment of benefits when the ditch was completed in 1916 was $49,942.75; the viewers' report estimated the redetermination benefits as $458,584.03 "based upon a comparison of the conditions which will exist with the drainage system repairs to the depth, grades and

---

property affected by the proposed improvement, or the owners of at least 26% of the property affected by the proposed improvement. See Minn.Stat. § 103E.215, subd. 4.

**5.** "Costs" include the cost of construction but also the cost of activities such as hauling dirt, removing trees, damage to growing crops and surveyor's costs. See, e.g., Minnesota Continuing Legal Education, *Drainage Law in Minnesota*, 32–33 (1985).

**6.** The drainage code defines "repair" as "restor[ing] all or part of a drainage system as nearly as practicable to the same condition as originally constructed and subsequently improved * * *." Minn.Stat. § 103E.701, subd. 1 (1998).

**7.** The drainage code states that benefits may be based on an increase in the current market value of the property as a result of the construction project, an increase in the potential for agricultural production as a result of the construction project, or an increased value of the property as a result of a potential different land use. See Minn.Stat. § 103E.315, subd. 5 (1998).

**8.** "Generally, the types of damages resulting from establishment of a public ditch are the cost of building the ditch and the damage to any lands through which it passes." Minnesota Continuing Legal Education, *Drainage Law in Minnesota*, 30 (1985).

tile sizes as shown on the original plans with the conditions which would have existed before the construction began." Thus, $458,584.03 reflects the present day benefit of the ditch if repaired to an "as new" condition when constructed.

The viewers' report also estimated the benefits of the portion of the project that represented an improvement over the ditch as originally constructed to be $508,766.72 "based upon a comparison of the conditions which would exist with the existing drainage systems in a reasonable state of repair and the conditions which will exist upon completion of the improvement." The report concluded: "It is our opinion that the proposed improvement will replace a portion of the existing drainage system and that the costs of the improvement should be prorated between repair and improvement."

The drainage authority determined that the petition satisfied the legal requirements of Minn.Stat. § 103E.341, subd. 2 (1998), requiring the benefits to exceed the costs as a condition of approving the project: "[t]he drainage authority shall establish, by order, a proposed drainage project if it determines that * * * the damages and benefits have been properly determined * * * [and] the estimated benefits are greater than the total estimated cost, including damages[.]" Minn.Stat. § 103E.341, subd. 2. It must dismiss the petition if it determines that "the benefits of the proposed drainage project are less than the total cost, including damages awarded[.]" Minn.Stat. § 103E.341, subd. 1 (1998).

The drainage authority first applied section 103E.215, subd. 6, and determined that the estimated repair cost portion of the improvement should be assessed against all property owners benefited by the entire drainage system and

the cost of improving the ditch beyond the repairs should be assessed only against the property benefited by the improvement.[9]

The drainage authority then determined that the estimated cost of repair of $290,279.01 was less than the redetermination benefits, $458,548.03, and the total cost of the improvement project of $593,565.43 was less than the sum of the redetermination benefits plus the benefit of improving the ditch by removing the tile and opening the ditch, estimated to total $967,314.75. The petition therefore met the statutory requirement that the benefits exceed the costs for the project.

Appellants, landowners who stand to be assessed for the cost of the improvement, appealed the drainage authority's order to the district court. The court affirmed the order on November 16, 1998, noting that the drainage authority adequately described a separable portion of the existing drainage system for improvements provided by section 103E.215, subd. 6. The court also affirmed the drainage authority's determination that the correct method for determining the cost of an improvement project is to subtract the repair portion of the improvement cost from the total cost of the project. Since the remaining amount of $303,286.42 was lower than the improvement benefits of $508,766.72, the court affirmed the determination that the estimated benefits exceed the estimated costs "both as to the Redetermination of Benefits and as to the Improvement Project."

On review by the court of appeals, the court held that the improvement concerned a separable part of the system–the main line–and did not pertain to the ditch laterals, therefore Minn.Stat. § 103E.215, subd. 6, was applicable relating to the allocation of assessments. *See In re Murray*

---

**9.** Generally, all owners of land through which the ditch passes share in the cost of repairing the ditch, even though some of them may receive no direct benefit from the repair. *See* Minn.Stat. § 103E.735, subd. 1 (1998). Un-

like the cost of repairs, the cost of an improvement is not borne by the entire ditch system but only by the owners of those lands that benefited by the improvement. *See* Minn.Stat. § 103E.215, subd. 6(b)(2).

*County Ditch No. 34,* 1999 WL 486865 at *3 (Minn.App. July 13, 1999). The court also held that because Minn.Stat. § 103E.215, subd. 6, establishes a "dual assessment of costs," *id.* at *2, the statute permits the separate assessment of repair and improvement costs, "each carrying [ ] separate costs and separate benefits," and concluded that the drainage authority adequately described a separable part of the drainage system and properly assessed the costs of the project. *Id.* at *3.

The court rejected appellants' claim that the benefits of the project do not exceed the cost of $508,766, concluding that the drainage project "serves both to restore the system to a functioning state, producing a benefit of $458,584, and to enhance the value of the system beyond its repaired value, producing an additional benefit of $508,766." *Id.* at *4. The court added the redetermination benefit of $458,584 to the improvement benefit of $508,766 for a total benefit of $967,350 and affirmed the drainage authority and district court's calculations: "$290,279 was assessed against the benefits of $458,584, and $303,286, the additional cost to achieve the enhanced value of the system, was assessed against benefits of $508,766." *Id.* at *1.

On further review by this court, appellants assert that the court of appeals incorrectly held that the benefits exceeded the costs of the improvement and that the main tile line is a separable portion of the ditch. We disagree and affirm.

■ Minnesota's laws pertaining to drainage ditches are a complex matrix adopted with the intent of reclaiming agricultural land by disposing of excess water that renders the land untillable, *see Town of Vivian v. Town of Dunbar,* 162 Minn. 491, 492, 203 N.W. 431, 432 (1925), and fairly allocating the costs among benefited landowners. We have held that the drainage laws "must be liberally construed, so

10. We have held that disputes concerning whether land is actually benefited are questions of fact. *See Oelke v. County of Faribault,* 260 Minn. 361, 366, 110 N.W.2d 145, 148

as to promote the public health and the drainage and reclamation of wet or overflowed land." *Lippmann v. Huhn,* 249 Minn. 1, 16, 81 N.W.2d 100, 109 (1957).

The drainage authority must dismiss a petition for improvement if it determines that "the benefits of the proposed drainage project are less than the total cost, including damages awarded," Minn.Stat. § 103E.341, subd. 1, and it must order the project when "the estimated benefits are greater than the total estimated cost, including damages." Minn.Stat. § 103E.341, subd. 1; *see also Hagen v. County of Martin,* 253 Minn. 367, 370, 91 N.W.2d 657, 660 (1958) ("no order shall be made establishing a drainage system unless the benefits to be derived from such a system are greater than the total estimated cost including damages").

The parties here do not challenge the drainage authority's estimates of the costs and benefits of the project.[10] Rather, they disagree with the drainage authority's reliance on section 103E.215, subd. 6, in arriving at its conclusion that the project's benefits exceed its costs under the cost-benefit analysis required by section 103E.341. The question before us, then, is one of statutory interpretation: does Minn.Stat. § 103E.215, subd. 6, allow a drainage authority to subtract repair costs from redetermination benefits and improvement costs from improvement benefits in conducting a cost-benefit analysis under Minn. Stat. § 103E.341?

■ The construction of a statute is a question of law we review de novo. *See Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (1998). In construing a statute, we look to its text

(1961) ("[w]hether land involved in a drainage proceeding has been benefited is a question of fact").

as a whole and give effect to all of its provisions. *See Kachman v. Blosberg,* 251 Minn. 224, 229, 87 N.W.2d 687, 692 (1958). With respect to drainage proceedings, "the provisions * * * are part of a complete statutory scheme designed to govern the establishment of a drainage system and since they relate to the same subject matter, they are in pari materia and should be construed together." *Hagen,* 253 Minn. at 371, 91 N.W.2d at 660.

 Minnesota Statutes § 103E.215, subd. 6, governs the assessment of costs and benefits where a separable part of a drainage system needs improvement. Subdivision 6 provides:

(a) If the existing drainage system needs repair and the petition for the improvement is for a separable part only of the existing drainage system, the engineer may include in the detailed survey report a statement showing the proportionate estimated cost of the proposed improvement required to repair the separable part of the existing system and the estimated proportionate cost of the added work required for the improvement * * *.

(b) At the hearing, if the drainage authority determines that only a separable portion of the existing drainage system will be improved and that the portion needs repair, the drainage authority shall determine and assess, by order, the proportionate cost of the improvement that would be required to repair the separable portion of the drainage system to be improved. The order must direct that:

(1) the repair portion is allocated as repairs and assessed against all property benefited by the entire drainage system, as provided by section 103E.731; and

(2) the balance of the cost of the improvement is assessed in addition to the repair assessment against the property benefited by the improvement.

Minn.Stat. § 103E.215, subd. 6.

Appellants argue that section 103E.215, subd. 6, allocating the cost of repairs to all landowners and the cost of improvements beyond the repairs only to those owners whose land is benefited by the improvement, plays no role in the cost-benefit analysis required by section 103E.341. They assert instead that the proper method of conducting a cost-benefit analysis is to compare the total improvement costs, including repairs, to the improvement benefits, and if the costs exceed the benefit of the improvement, the petition must be denied. Appellants also argue that the drainage authority should not have considered redetermination benefits in its analysis because they are irrelevant in an improvement proceeding.

Respondents refer to section 103E.215, subd. 6, and argue that the drainage authority followed the statute by explicitly requiring that a proportion of the entire cost of the improvement project must be assessed as the repair cost and a portion must be assessed as a cost relating to the betterment of the ditch over and above the original project. They further point to the fact that the existing drainage system is not in a reasonable state of repair and by statute must be repaired,[11] but because the construction of the improvement eliminates the repair cost of $290,279 it represents a savings that can legitimately be taken into account in determining the project cost.

For several reasons we hold that respondents' reading of the statute is correct in light of the statutory language and against the backdrop of the intent of the drainage laws to "promote the public health and the drainage and reclamation of wet or overflowed land." *Lippmann,* 249 Minn. at 16, 81 N.W.2d at 109.

11. The drainage authority is required to repair the system. *See* Minn.Stat. § 103E.705, subd. 1 (1998). ("the drainage authority shall maintain the drainage system * * * and provide the repairs necessary to make the drainage system efficient").

We agree with respondents that the proper method of determining the costs and benefits of an improvement under section 103E.215, subd. 6, is to subtract the repair costs from the redetermination benefits and the improvement costs from the improvement benefits. The language of section 103E.215, subd. 6, provides that repair costs and improvement costs are determined separately under the statute.[12] Appellants' interpretation of section 103E.215, subd. 6, acknowledges the application of the dual assessment for cost allocation purposes but rejects it in the cost-benefit analysis. Appellants thus urge us to disregard both the repair costs and the redetermination benefits in the cost-benefit analysis, ignoring that almost half of the "improvement cost" is a repair cost yielding a $458,584 redetermination benefit over and above the "improvement benefits."[13] Appellant's approach is inconsistent with the statutory distinction between repair costs, incurred in bringing the system back to an earlier standard of performance, and improvement costs, incurred in bringing the system to a higher level of capacity than originally constructed. Moreover, it would be at least incongruous, and perhaps absurd, to read section 103E.215, subd. 6, as mandating the drainage authority to both require and ignore cost-benefit estimates. Finally, where an improvement project both repairs and improves a ditch, as here, under appellant's reasoning the repair and improvement must be petitioned and considered in separate proceedings even though in reality they lead to a single result–whether to go forward with the improvement project or to reject it.

In a sense, the repair aspect of the project is a concept only, but it serves the useful purpose of determining what part of the total project cost should be assessed against all property owners benefited by the entire ditch. The need for making such a determination is clear–the ditch as a whole is improved by the improvement project just as if the repair had been made, and the fact that a repair is not actually made that would return the ditch to its originally constructed capacity should not affect the applicability of section 103E.215, subd. 6, nor does it contradict the statutory language: "the repair portion is *allocated* as repairs and *assessed* against all property benefited by the entire drainage system." Minn.Stat. § 103E.215, subd. 6(b)(1) (emphasis added). Even

12. The dissent argues that Minn.Stat. § 103E.215, subd. 6, does not require estimated repair costs to be factored into the cost-benefit analysis under section 103E.341 because neither statute explicitly states that the separation of repair and improvement costs apply under Minn.Stat. § 103E.341. While section 103E.215, subd. 6, does not explicitly indicate either way, harmonizing this section with the language in section 103E.341 requires a balancing of costs and benefits and leads us to conclude that the sections must be read together to avoid the absurdity of requiring different cost-benefit formulations for statutes within the same chapter. *See, e.g., Van Asperen v. Darling Olds, Inc.,* 254 Minn. 62, 73–74, 93 N.W.2d 690, 698 (1958) ("a statute is to be read and construed as a whole so as to harmonize and give effect to all its parts"); *Kachman,* 251 Minn. at 230, 87 N.W.2d at 692 ("a particular provision of a statute cannot be read out of context but must be taken together with other related provisions to determine its meaning").

We also note that the dissent's comment in footnote one that Minn.Stat. § 103E.215, subd. 6, provides that repair costs may be included in the detailed survey report *only* for assessment purposes does not follow from the language of the statute, as the statute includes no such limitation.

13. The dissent disagrees that the avoidance of repair costs can be included as savings. We respond to the dissent's "flat tire" analogy by offering another analogy: when one purchases clothing that needs repair–for example pants with a broken zipper–the cost of the repair is reflected in the sale or reduced price of the pants; similarly the repair costs are properly subtracted from the improvement costs of the ditch improvement.

We also observe that the dissent's scenario where an improvement costing $110,000 would be approved where the repair cost is $100,000 and the benefit $25,000 seems to us unlikely, since under our reading of the statute the "benefit" would include both redetermination benefits and improvement benefits.

though the repair portion of the project may never be undertaken, as here, its concept is useful in creating equity in the assessment of costs–the repair costs against every landowner benefited by the ditch, and the cost of the improvement, or upgrading, against only those benefited by the improvement.

The drainage authority here found that the drainage project alleviated the need for a repair and also met an improvement objective. To go a step further and require an actual repair to trigger the statute would of course be absurd. We do not believe the legislature intended such a result. The purpose of the statute appears to address exactly the situation here where a ditch in need of repair is instead improved.

The dissent finds troubling the role redetermination benefits play in our analysis. We agree with the dissent that redetermination benefits "reflect the value of the entire drainage system" were it restored to its original condition. Where we differ is our conclusion that linking redetermination benefits with repair costs is logical since redetermination benefits, by definition, flow from the repair of the ditch, whether the repair is fictional or real. Improvement benefits are obviously linked to improvement costs; redetermination benefits–the benefits gained from repairing the ditch to its original condition–must then be the benefits flowing from a repair, and are part of a valid cost-benefit analysis under section 103E.341.

Practically, our approach also reflects the determination of the engineer and viewers. The engineers concluded that with the expenditure of $290,279.01 the

ditch could be raised to the condition it was in when constructed in 1916, producing the redetermined benefit of $458,584.03, and further that by spending a total of $593,565.43 on the project, additional benefits of $508,766.72 would be achieved. With combined benefits totaling nearly a million dollars and combined repair and improvement costs totaling $593,565, all arithmetical roads lead to the same conclusion: the costs of the drainage project do not exceed its benefits.[14]

Appellants also contend that the main tile line is not a separable part of the drainage system and since the improvement covers the entire system section 103E.215, subd. 6, is not applicable. They base their claim on the fact that the improvement project would replace nearly the entire length of the main tile line with open ditch. Appellants refer to section 103E.215, subd. 6, stating that "[t]he notice of hearing on the detailed survey report must be given by publication and mailing to all persons owning property affected by the existing drainage system. The hearing may be held at the same time and location as the establishment hearing for the improvement." Minn.Stat. § 103E.215, subd. 6(a). Appellants assert that because one hearing refers to the "existing drainage system" and the other hearing refers to the improvement, the use of "separable" in the statute must refer to a separable geographic area of the system.

We have held that where the legislature's intent "is clearly manifested by plain and unambiguous language, no statutory construction is necessary or permitted." *Ed Herman & Sons v. Russell*, 535

---

14. In response to the dissent's comment in footnote three that neither party argued that repair costs could be subtracted from redetermination benefits, we point to the drainage authority's final hearing findings and order on June 2, 1998, where it included as one finding "[t]hat the Viewers have found net benefits as to the Redetermination of Benefits in this matter in the amount of $458,584.03. The costs associated with the repair are in the amount of $290,279.01." The district court

similarly concluded that redetermination benefits are linked to repair costs, referring to the drainage authority's finding that the benefits exceeded the costs "both as to the redetermination of benefits and as to the improvement project." Were repair costs and redetermination benefits irrelevant to the improvement petition, as the dissent suggests, it appears unlikely that both the drainage authority and the district court would have referred to them in their findings.

N.W.2d 803, 806 (Minn.1995). Section 103E.215, subd. 6, is not ambiguous–nothing in its language suggests that the legislature intended "separable" to mean "geographically separable," and the dictionary defines "separable" as "capable of being separated or disassociated" and makes no reference to geographic discreteness. *Webster's Ninth New Collegiate Dictionary* 1073 (1991).

 Whether the improvement is to a separable portion of the ditch is a question of fact and we hold findings of fact as clearly erroneous only where we are "left with a definite and firm conviction that a mistake has been committed." *Northern States Power v. Lyon Food Prods. Inc.*, 304 Minn. 196, 201, 229 N.W.2d 521, 524 (Minn.1975). We have no such conviction here. Both the engineer [15] and the drainage authority found the improvement to be to a separable portion of the ditch, the trial court reached the same conclusion and was affirmed on court of appeals review. The engineer's report and drainage authority's findings are amply supported by the record: the improvement involved the main sewer trunk, excluding several miles of laterals, and also did not include 600 feet of the current open ditch at the outlet. Appellants' argument that "separable" means a discrete and independent ditch system is not supported by logic or practical application and makes little sense in light of the carefully crafted language of section 103E.215, subd. 6, relating to splitting the assessment of the repair and improvement costs as to a single ditch system.[16]

We affirm the court of appeals and hold that the drainage authority correctly applied Minn.Stat. § 103E.215, subd. 6, because the improvement pertained to a separable portion of the ditch. We also hold that the drainage authority and the trial court did not err in applying Minn.Stat. § 103E.215, subd. 6, to require that repair costs be subtracted from redetermination benefits and improvement costs subtracted from improvement benefits.

Affirmed.

PAGE, Justice (dissenting).

I respectfully dissent. This case arises as a result of a petition for improvement of Murray County Ditch No. 34 filed by owners of property that would be affected by the proposed drainage system improvements. No petition seeking repair of the drainage system has been filed, therefore, there are no issues relating to the repair of the system before us. The project at issue is a project for the improvement of the entire main tile line of Murray County Ditch No. 34. In resolving the issues presented, the court improperly concludes that the project involves a separable portion of the drainage system. The court then compounds that error by subtracting, absent statutory authority to do so and in defiance of common sense, avoided repair costs from the improvement costs in the cost-benefit analysis and by including redetermination benefits as part of the improvement benefit even though redetermination benefits reflect the value of the entire drainage system and not simply the value of the repairs to the system. The net effect of these last two errors is that

---

**15.** The engineer's report states explicitly that the improvement is "required to repair a separable part of the existing system" and at the improvement hearing the engineer testified, "my opinion is that it's (the proposed improvement) separable."

**16.** We thus disagree with the dissent's statement that "no adequate factual basis" exists for the conclusion reached by three factfinders–the engineer, the drainage authority and the district court, as well as the court of appeals–when in both the engineer's report

and his testimony he explicitly referred to the portion of the ditch petitioned for improvement as separable. Moreover, whether a part is separable from the whole is not solely determined by any one factor, for example and quoting the dissent, an engine is of "obvious importance" to an automobile, which "would not function without" it. However, the engine is also separable from the automobile, physically and functionally, as a repair of the engine is not a repair of the brakes, or the steering.

for all future drainage system improvement projects costs will always be understated and benefits will always be overstated. In addition, these errors will lead to absurd results.

The record before us does not support the conclusion that this improvement project is separable from the remainder of the drainage system. To overcome this problem, the court simply notes that the engineer's report, the county board, and the trial court found the improvement to be a separable portion of the drainage system. The evidence, however, on this point was sparse and consists only of the engineer's report and testimony. We have always required an adequate factual basis for any expert testimony. *See Dunshee v. Douglas,* 255 N.W.2d 42, 48 (Minn.1977); *Bohach v. Thompson,* 307 Minn. 332, 336, 239 N.W.2d 764, 767 (1976). There is no adequate factual basis here. The engineer's report simply states, "[T]he Petition for Improvement is for a separable part of the existing drainage system, consisting of the main branch." The engineer's testimony is no more helpful. At the hearings, the engineer was asked a single question regarding separability. The question arose in the context of discussing the engineer's estimate of repair costs. Counsel for the ditch petitioners asked the leading question, "And that is a separable part of the system; that is, the part that will be improved?" Answer, "Yes, that is the separable part." The question was asked without establishing a foundation for the engineer's opinion, or even explaining what the engineer understood separable to mean. An opinion that the project was separable, in the complete absence of foundation, is not helpful to the trier of fact. *See* Minn. R. Evid. 702.

In contrast, when the engineer described the nature of the project outside of the context of discussing repair costs, a much different impression is left. The engineer's report describes the project as one "to replace the drain tile in its entirety." The engineer confirmed that if the proposed improvement was approved, the main line would be changed from buried tile to an open ditch constructed continuously from one end to the point 600 feet from the terminus where an open ditch now exists. The engineer testified that opening the ditch would provide everybody along the ditch with an adequate outlet and admitted that the system would not function without the main line, as it provides the outlet for the entire drainage system.

Thus, the engineer's opinion and trial court's finding that the improvement project was separable are not reasonably supported by the evidence as a whole. *Cf. Northern States Power Co. v. Lyon Food Prods., Inc.,* 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975). Given the obvious importance of the main line to the entire drainage system, and given the extensive nature of the improvements to the main line contemplated, it is clearly erroneous to consider this project as separable from the rest of the drainage system. I am "left with a definite and firm conviction that a mistake has been committed." *Id.*

That mistake leads the court to its next misstep, the conclusion that avoided costs of repair should be deducted from the costs of an improvement. The legislature provided that a ditch improvement should not go forward unless the drainage authority finds that the benefits are greater than the "total estimated cost, including damages." Minn.Stat. § 103E.341, subd. 2(a)(4). The term "cost" is not defined in statute, so we adopt the common usage of the term. *See* Minn.Stat. § 645.08 (1998). Cost means "the amount or equivalent paid or charged for something: price." *Webster's Seventh New Collegiate Dictionary* 189 (1971). Landowners assessed for this project will not be able to deduct from the amount paid for the improvement the amount they would have paid for a repair. Accordingly, it contravenes the simple, common sense definition of cost to deduct avoided repair costs when determining the total cost of the improvement.

Deducting avoided repair costs also perverts the cost-benefit analysis and leads to absurd results. Imagine a repair cost of $100,000 that closely approximates the improvement cost of $110,000. Under the court's analysis, the resulting improvement cost is only $10,000. Imagine further that viewers determined that the benefits of the project will add $25,000 in value to the drainage system. Under the court's analysis, $25,000 in benefits offset an outlay of $110,000.

Moreover, even if we assume that this project is separable, the statute the court relies on provides no authority for considering avoided repair costs in the cost-benefit analysis. Minn.Stat. § 103E.215, subd. 6(a) states that the engineer "*may* include in the detailed survey report a statement showing the proportionate estimated cost of the proposed improvement required to repair the separable part of the existing system and the estimated proportionate cost of the added work required for the improvement." Minn.Stat. § 103E.215, subd. 6(a) (emphasis added). The statute says nothing about the estimated cost of repairs being factored into the cost-benefit analysis used to determine whether the improvement of the separable portion is to be approved. *See* Minn.Stat. § 103E.341. Surely if the legislature intended to have avoided repair costs deducted from the estimated improvement costs, it would have *required* the engineer to determine repair costs and not made their inclusion in the report permissive. The legislature also would have explicitly *required* the drainage authority to use that figure in the cost-benefit assessment on the petition.

The court reads into section 103E.215, subd. 6(a) a purpose that is nowhere evident from its plain text. The question left open then is what is the purpose served by permitting the engineer to show estimated costs of repair in the engineer's report. The answer to that question is found in Minn.Stat. § 103E.215, subd. 6(b)(1) and (2), which set out how costs are to be assessed against benefited property.[17]

Respondents filed a petition for improvement, not repair. They nonetheless argue that because a repair is mandatory its costs are "saved" in an improvement. They are not in fact saved however, they are simply replaced by different costs, the costs of the improvement. Further, repair is not automatic. *See* Minn.Stat. § 103E.715, subd. 4 (1998) (requiring repair on petition to be made when drainage authority determines repairs are necessary and in best interests or that cost of repair will not exceed the total benefits). Just as one cannot deduct the cost of fixing a flat tire from the price of an entirely new tire, one cannot consider avoided repair costs as savings on an entirely separate and distinct improvement project.[18] Doing so significantly underestimates the cost of the improvement.

Common sense does not allow, and the legislature has not authorized, exclusion of avoided repair costs from the assessment of costs of a ditch improvement. Therefore, the proper total cost of this project for cost-benefit comparison is the engineer's estimate of $593,565.43.

The court states that not considering avoided repair costs disregards the repair costs and the redetermination benefits in

17. The only use of the avoided repair cost described in section 103E.215, subd. 6 is in the assessment. Improvement costs for a separable improvement are assessed against only those landowners who benefit from the improvement; and repair costs are assessed against all landowners affected by the ditch. *See* Minn.Stat. § 103E.215, subd. 6(b). Where the existing drainage system needs repair and the petition is for improvement of a separable part of the system, establishing what the cost of repair would be is necessary

to properly assess the landowners affected if the improvement project is completed. *See id.* Repair costs *may* be included in the detailed survey report *only* for this purpose.

18. The court's zipper analogy fails. What the court's holding suggests is that the savings on the pants with the broken zipper can be used in the purchase of an entirely different pair of pants. With apologies to Wallace and Gromit, the majority has "The Wrong Trousers."

the cost-benefit analysis, "ignoring that almost half of the 'improvement cost' is a repair cost yielding a $458,584 redetermination benefit over and above the 'improvement benefits.'" This statement demonstrates the second fundamental flaw in the court's cost-benefit analysis, the purported comparison of redetermination benefits with the costs of repair. Of course, as noted above, there is no petition to repair the ditch before the court. Therefore, there is no reason to compare costs and benefits of a repair. But even if this case were before us on a petition for repair instead of a petition for an improvement, the court's use of repair costs and redetermination benefits is incorrect.

The court misconstrues what redetermination benefits represent. Redetermination benefits reflect the value of the entire drainage system, not simply the value of a repair. The drainage system's benefits must be redetermined from time to time to reflect current land values and physical changes in the affected land, so that land-

owners may be properly assessed. *See* Minn.Stat. § 103E.351; *Minnesota Public Drainage Manual* 2.58–.59 (Minnesota Department of Natural Resources, 1991) (noting four reasons why redetermination might be necessary or beneficial, one of which is a repair project).[19] On redetermination, "[v]iewers need to determine benefits *as if no drainage system existed.*" *Public Drainage Manual* 4.8 (emphasis added). Therefore, the redetermination amount is not, as the court suggests, the difference between the current value of the ditch and its value as repaired; the redetermination amount reflects the entire value of the ditch in a reasonable state of repair.[20] Accordingly, it is inappropriate to compare the costs of a repair to redetermination benefits, as the court has done.[21]

Finally, it is not appropriate to add the entire redetermination benefit ($458,584.03) to the improvement benefit ($508,766.72) when considering the benefit of this project. While in need of repair, the ditch had value in the state it was in

19. Although the court asserts that "linking redetermination benefits with repair costs is logical since redetermination benefits, by definition, flow from the repair of the ditch, whether the repair is fictional or real," there is no statutory definition of redetermination benefits and no authority linking redetermination to a repair.

20. The court quotes prefatory language in the viewer's redetermination report indicating the report is "based upon a comparison of the conditions which will exist with the drainage system repairs to the depth, grades and tile sizes as shown on the original plans with the conditions which would have existed before the construction began." The court apparently infers that "the construction" referenced is the hypothetical repair construction, but other references in the viewer's report make clear that the term refers to the construction of the entire drainage system. The report assigned benefit values for different types of land based upon an increase in the potential for agricultural production "as a result of constructing *the drainage system.*" (Emphasis added.) The beginning land use, property value and economic productivity were considered "before *the drainage system* construction." (Emphasis added.)

21. Indeed, the court states the issue before the court as, "Does Minn.Stat. § 103E.215, subd. 6 allow a drainage authority to subtract repair costs from redetermination benefits and improvement costs from improvement benefits in a cost-benefit analysis under Minn. Stat. § 103E.341?" This statement is perplexing, as even respondents do not attempt to use the $458,584.03 of redetermined benefits to support either the cost of the (avoided) repair or the cost of the improvement. The district court made no finding regarding redetermination benefits, simply noting that the drainage authority "determined that the estimated benefits are greater than the total estimated costs, including damages, both as to the redetermination of benefits and as to the improvement project." The reason for the drainage authority to evaluate the redetermination benefits is provided by statute. Minn. Stat. § 103E.351, subd. 2 requires the drainage authority to confirm the benefits and damages arrived at through redetermination. The approval of redetermination benefits and damages exists wholly independently of the ditch improvement approval process, however. *See id.* The drainage authority finding therefore relates only to establishing redetermination benefits of $458,584.03, which no one here challenges.

when this petition was filed. That pre-repair value is encompassed within the $458,584.03 of redetermination benefits, and therefore a repair will not produce $458,584.03 in added value. Further, including redetermination benefits as a benefit of the improvement dramatically overstates the added value to be derived from the project.

By erroneously comparing: a) the benefits from improvement *plus* the benefits of the entire drainage system to b) the cost of improvement alone, the court materially alters the proper cost-benefit analysis.

Including the entire redetermination benefit in the benefits of an improvement project has significant implications for agricultural land in Minnesota. The overestimate of benefits, especially when coupled with an underestimate of costs that results from deducting avoided repair costs, means that in the future no ditch improvement project will likely be denied. The court thereby thwarts the careful review and deliberative process envisioned by the legislature for the establishment and improvement of drainage systems.

In sum, because the improvement project was not separable, the board and the lower courts were not authorized to even consider Minn.Stat. § 103E.215, subd. 6. Even if the project were separable, subdivision 6 does not allow a drainage authority to deduct avoided repair costs in performing the cost-benefit analysis required for approval of a drainage system improvement project. Deducting avoided repair costs leads to absurd results that the legislature could not have intended. Nor did the legislature intend for the drainage system's redetermination benefits plus the project's improvement benefits to be compared with the improvement cost. Because the damages and benefits were not properly determined, the drainage authority was not authorized to approve the improvement project. *See* Minn.Stat. § 103E.341, subd. 2(3).

I would reverse.

BLATZ, C.J.

I join in the dissent of Justice Page.

PAUL H. ANDERSON, J.

I join in the dissent of Justice Page.